# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALAN WHITE (K-55560), | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 16 C 10462 |
| | ) |
| LT. CHARLES BEST, TARRY WILLIAMS, | ) Judge Rebecca R. Pallmeyer |
| COLLEEN FRANKLIN, TROY JOHNSON, | ) |
| and MICHAEL STUDER, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alan White, an Illinois prisoner, alleges that Defendants Charles Best and Colleen Franklin violated his due process rights in conducting an Adjustment Committee hearing on charges of misconduct. He alleges, further, that Defendants Tarry Williams, Michael Studer, and Troy Johnson acted with deliberate indifference to the unconstitutional conditions of his confinement while he was housed in segregation. Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. The motion is fully briefed, and for the reasons explained here, is granted in part and denied in part.

## FACTS

Defendants have submitted a Statement of Uncontested Material Facts as required by the court's Local Rules [58]. Because Plaintiff is proceeding *pro se,* Defendants provided him with the notice required by this court's Local Rule 56.2 [59], which explains the significance of a summary judgment motion and provides instructions for responding to such a motion. Although Plaintiff's response does not comply fully with those instructions or the court's local rules, the court has reviewed his factual submissions as well as exhibits he submitted in opposition to the summary judgment generously and will construe them as favorably as the record and Local Rule 56.1 permit. The court draws inferences in his favor to the extent that he has pointed to admissible evidence in the record that corresponds to Defendants' facts or could properly testify himself

about the matters asserted. See *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014); *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); FED. R. EVID. 602. The facts, as set forth in those materials, are as follows.

Plaintiff is currently incarcerated at Stateville Correctional Center ("Stateville"), where he has been housed for approximately ten (10) years. (Defendant's Statement of Fact [58] at ¶ 1.)

Defendant Charles Best is employed by the Illinois Department of Corrections, and served on Stateville's Adjustment Committee ("AC") in July 2014. (*Id.* at ¶ 2.) Defendant Colleen Franklin is employed by the Illinois Department of Corrections as a Correctional Counselor II. One of her job duties as a Correctional Counselor is to conduct hearings on charges of disciplinary violations ("tickets"). (*Id.* at ¶ 3.) Defendant Tarry Williams was previously employed by the Illinois Department of Corrections, and served as Stateville's Warden from April 1, 2014 through July 12, 2015. (*Id.* at ¶ 4.) Defendant Troy Johnson ("Johnson") is employed by the Illinois Department of Corrections and works at the Joliet Treatment Center in Joliet, Illinois. Johnson worked as Stateville's Chief Engineer from August 6, 2013 through May 2, 2014. (*Id.* at ¶ 5.) Defendant Michael Studer was previously employed by the Illinois Department of Corrections; he worked as Stateville's plumber from approximately 2002 through December 31, 2014 and also served as Stateville's "water operator" during that period. (*Id.* at ¶ 6.)

On July 9, 2014, Plaintiff was issued a disciplinary ticket for the use of electronic contraband—specifically, the ticket accused Plaintiff of using a cell phone that had been confiscated from another prisoner to contact his mother. (*Id.* at ¶ 15.) Plaintiff asserts that he did not have access to the cell phone at all, and that the phone number listed on the disciplinary ticket was that of Plaintiff's brother, not his mother. (*Id.* at ¶ 16.) In anticipation of a disciplinary hearing before Stateville's AC, Plaintiff obtained a printout from his brother's cell phone provider, which showed all incoming and outgoing calls on the date in question. (*Id.* at ¶ 17.) At his deposition in this case, Plaintiff acknowledged that he had not "designate[d] any witnesses on the ticket that [he] wanted called at [his] hearing." (Plaintiff's Deposition, Exhibit A to Defendant's Motion for

2

Summary Judgment [57-2] at 35:1-4.]

The Adjustment Committee hearing took place on July 21, 2014, and was conducted by Defendants Best and Franklin. (Defendants' Statement of Facts [58] at ¶ 19.) Plaintiff was given an opportunity to speak, and he told the officers that the records he had show that he did not use the phone to contact his mother. (*Id.* at ¶¶ 20, 21.) The AC subpoenaed the history of the confiscated cell phone, which it reviewed. From that review, the hearing officers determined that Plaintiff had in fact used the phone to contact his mother. (*Id.* at ¶ 22.) The AC also reviewed the phone's log. (*Id.* at ¶ 23.) The AC further reviewed a letter intercepted by Internal Affairs ("IA") showing that Plaintiff owed money to another inmate for the use of the phone. (*Id.* at ¶ 24.) On the basis of the cellular phone log and the intercepted letter, the AC found Plaintiff guilty of possessing electronic contraband. The AC findings were reduced to writing on July 21, 2014. (*Id.* at ¶ 25.) Plaintiff was punished with a year of reduction to C grade, one year in segregation, revocation of three months of good conduct credits, housing and assignment changes, a disciplinary transfer, and one year commissary restriction. (*Id.* at ¶ 26.) Plaintiff was subsequently taken to segregation. (*Id.* at ¶ 27.)

Plaintiff asserts that the AC's decision was wrong, and that they reached an incorrect decision because he was not permitted to present his evidence. (*Id.* at ¶ 28.) Plaintiff admitted that he did later receive a written summary of the AC's decision, although he could not remember exactly when he received the document. (*Id.* at ¶ 29; 7-2 (Pl.'s Dep.) at 53:4-12.)

Plaintiff was in segregation from July 31, 2014 through July 31, 2015. (Defendants' Statement of Fact [58] at ¶ 30.) During that period, Plaintiff's access to A/V entertainment was revoked; his visitation privileges were limited, and all visitation took place through glass; his telephone privileges were suspended; his movements were limited and he was moved with a lead chain attached to his handcuffs; he was denied access to religious programming (apart from programming available on television and visits to his cell from the prison chaplain); he was held in solitary confinement (though not alone, and not restricted to his cell at all times); and his

commissary privileges were restricted for one year. (*Id.* at ¶ 31.)

According to Defendant Williams, inmates in segregation are provided with the same quality and quantity of food as inmates in general population. ([*d.* at ¶ 32.) Plaintiff testified, however, that he was served insufficient food portions while in segregation. (Plaintiff's Dep. [57-2] at 60:1.) Plaintiff testified further that he could tell that the food portions in segregation were smaller from the size of the trays on which the food in segregation is served. (*Id.* at 60:12-20.)

While in segregation, Plaintiff claims he was housed in cells infested with roaches, mice, and ants. (Defendants' Statement of Facts [58] at ¶ 33.) When asked at his deposition whether he became sick as a result, Plaintiff testified, "I don't–I mean, I have been sick, but I don't know, really, you know. Sometimes you don't know what you get sick from. Germs, I know they carry a lot of germs, so I'm not a doctor so I can't really say." (Plaintiff's Dep. [57-2] at 66:18-24.) Plaintiff does not know whether the presence of ants caused him to become sick. (Defendants' Statement of Facts [58] at ¶ 35.) Plaintiff does not know whether the presence of mice caused him to become sick. (*Id.* at ¶ 36.) Plaintiff claims that birds were present inside F-House while he was housed in segregation, as well, but he does not know whether the presence of birds in F-House caused him to become sick. (*Id.* at ¶¶ 37, 38.] Plaintiff claims that he was forced to bathe in a shower area with mold, rust, and soap scum. (*Id.* at ¶ 39.) Plaintiff testified that he was occasionally short of breath in the showers, but could not say that the presence of mold, rust, and soap scum in showers caused him to become sick. (*Id.* at ¶ 40.) Plaintiff claims that one of the toilets in one of his cells had black mold on it, and that rainwater ran into his cell. (*Id.* at ¶ 41.) Plaintiff does not know whether the black mold in his cell caused him to become sick, but does not believe he was made sick by rainwater. (*Id.* at ¶¶ 42, 43.)

At his deposition, Plaintiff was asked to describe his communications with Defendant Williams about the conditions in F-house. (Plaintiff's Dep. [57-2] at 77:6-8.) Plaintiff explained that "when [Williams] do his walk through, we complained about, you know the conditions." (*Id.* at 77:9-11.]) He testified further that "[s]ometimes when [Williams] was walking, like was

everything okay, we tell him, and he would have somebody behind him like the major or lieutenant, and he jot down what complaints we have, I guess, basically, to either record it, or letting us know that they are going to fix it, or what have you." (*Id.* at 77:12-20.) When asked to describe his complaints to Williams specifically, Plaintiff testified that on more than one occasion, "[w]e complained about the roaches, the mice. It depends on if it was summer or winter. We definitely complained about the ants or the windows not being able to shut so the cold air is getting in; them taking too long to put the heat on. Why are we being confined and boxed up like that for long periods of time when we move. All those types of issues and things like that." (*Id.* at 77:22-24, 78:1-9, 12.)

For his part, Defendant William has no memory of these communications. He attests in an affidavit that he is not personally familiar with Plaintiff, cannot recall ever meeting Plaintiff, and that he does not recall any conversations with Plaintiff regarding the conditions of his confinement. (Williams Affidavit, Exhibit I to Defendants' Motion [57-10] at ¶¶ 6-10.) Defendant Williams also attests that he does not recall having reviewed any grievances from Plaintiff regarding the conditions of his confinement, and that he did not review the grievance Plaintiff attached to his complaint. (*Id.* at ¶¶ 12-13.) Finally, Defendant Williams explained that when inmates directed complaints to him about problems with the housing unit or their cell, he directed one of his Assistant Wardens to look into the matter and address the issue. (*Id.* at ¶ 15.)

Plaintiff does not know Defendant Johnson and never spoke to him about the conditions of his confinement. (Defendants' Statement of Facts ¶ 50.) At his deposition, Plaintiff was asked how Defendant Johnson knew that the water supply was allegedly contaminated. (Plaintiff's Deposition [57-2] at 83:4-5.) In response, Plaintiff testified that Johnson was aware of the allegedly contaminated water in his cell because Plaintiff filed a grievance regarding the quality of the water and because other inmates have filed grievances about the quality of the water. (*Id.* at 83:6-17.) Defendant Johnson attests, however, that he did not review inmate complaints, they were not forwarded to him for review, and he only became aware of maintenance issues at

Stateville when he received a work order for maintenance. (Johnson Affidavit, Exhibit J to Defendant's Motion [57-11] at ¶ 9.) Defendant Johnson is not familiar with Plaintiff, cannot recall speaking to him about the conditions of Plaintiff's confinement (including the "safety" of the water at Stateville), and does not recall receiving any written correspondence from Plaintiff. (*Id.* at ¶¶ 11-15.)

Plaintiff testified that he sued Michael Studer due to Stateville's "dilapidated" condition and because F-house cells are known to be uninhabitable and unfit for human residency. (Plaintiff's Deposition [57-2] at 84:3-8.) Plaintiff believes that Michael Studer was aware of the conditions in Stateville's F-house because of complaints that he and other inmates filed (via grievance), and because of oral complaints made to other staff members. (Defendants' Statement of Facts [58] at ¶ 56.) But Defendant Studer attests that he did not review inmate grievances, nor were they forwarded to him for review. (Studer Affidavit, Exhibit K to Defendants' Motion [57-12] at ¶¶ 7-8.) Defendant Studer, too, claims that he is not familiar with Plaintiff, does not recall having ever spoken to Plaintiff, does not recall Plaintiff ever complaining to him about the conditions of his confinement or the F-house, and does not recall receiving any written correspondence from Plaintiff complaining of the conditions of Plaintiff's confinement. (*Id.* at ¶¶ 9-14.)

## DISCUSSION

Plaintiff White has presented two claims in this lawsuit: a challenge to the disciplinary proceedings relating to his alleged use of a cellphone and a challenge to the conditions of his confinement. Defendants argue that the due process claim is barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), and, alternatively, fails on its merits because Best and Franklin provided Plaintiff with constitutionally adequate due process at his AC hearing. (Memorandum in Support of Defendants' Motion [57-1] at 5.]. They argue, further, that the evidence does not support Plaintiff's allegations about the conditions of his confinement at Stateville. The court addresses these arguments in turn.

**A.     Plaintiff's Due Process Claim against Defendants Best and Franklin**

### 1. Due Process Claim is Barred by *Heck v. Humphrey*

Defendants Best and Franklin argue that they are entitled to summary judgment as to Plaintiff's due process claim because it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Defendants argue that Plaintiff was punished with the revocation of three months of good-conduct credit, which has not been restored. Thus, they argue that any judgment in Plaintiff's favor that his disciplinary hearing violated his due process rights would imply the invalidity of his sentence. (Defendants' Memorandum [57-1] at 2.) The court agrees.

Under the Supreme Court's decisions in *Heck v. Humphrey,* 512 U.S. 477 (1994), and later in *Edwards v. Balisok*, 520 U.S. 641 (1997), a prisoner may not bring a § 1983 suit that, if successful, would necessarily undermine a still-valid disciplinary conviction that affects the fact or duration of the prisoner's sentence, such as the revocation of good time credits. *Heck*, 512 U.S. at 486–87; *Edwards,* 520 U.S. at 646; *see DeWalt v. Carter,* 224 F.3d 607, 617–18 (7th Cir. 2000). The prisoner's § 1983 suit must wait until he has "achieve[d] favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004); *see also Edwards,* 520 U.S. at 648. In determining whether a § 1983 suit is *Heck* barred, a court should focus in particular on how the plaintiff frames his complaint and the consequences that would flow from a favorable decision. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006); *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) (the question is not whether it would be theoretically possible to plead a claim without questioning the validity of the conviction, but rather whether the plaintiff has in fact made "allegations that were inconsistent with the conviction's having been valid").

As to procedural due process claims like Plaintiff's, the Seventh Circuit has explained that *Heck* bars a certain "category" of allegations, but not others. *See Clayton-El v. Fisher*, 96 F.3d 236, 242-43 (7th Cir. 1996); *Dixon v. Chrans*, 101 F.3d 1228, 1230-31 (7th Cir. 1996). *Heck* bars the "traditional due process" claims, which are claims where "to decide that [the prisoner] is

entitled to damages would be to determine that his due process rights were violated in the manner in which the disciplinary proceedings were conducted, and that determination, in turn, would call into question the results of the hearing." *Dixon,* 101 F.3d at 1230-31; *Clayton-El*, 96 F.3d at 242-44. The only claims that escape *Heck's* bar are the narrow category that are "not dependent upon anything that happened at the disciplinary hearing" and do not require a federal court to "decide whether the disciplinary process against [the prisoner] reached the right result." *Clayton-El,* 96 F.3d at 243 (explaining that a claim that a prisoner never received notice of a hearing is in the category of claims immediately cognizable under § 1983).

Here, Plaintiff's claims are barred by *Heck*. A finding that the hearing denied Plaintiff procedural due process, would, if established, necessarily imply the invalidity of the hearing's result. Plaintiff's claims, generally speaking, challenge the allegedly unfair manner in which his disciplinary proceeding was conducted and, relatedly, the purported lack of evidence supporting the AC's guilty finding. These claims fall into the category of due process claims articulated by the Seventh Circuit and the Supreme Court that are *Heck*-barred. *Edwards*, 520 U.S. at 645; *Dixon*, 101 F.3d at 1230-31; *Clayton-El*, 96 F.3d at 242-44; *see also Lusz v. Scott*, 126 F.3d 1018, 1022 (7th Cir.1997) (denial of opportunity to call witnesses and bias of hearing officer could result in a reinstatement of good time).

Plaintiff challenges this conclusion on three grounds. First, he argues that he is not in fact seeking to overcome the ruling of the AC and is not challenging the finding of guilt. (Plaintiff's Response [76] at 7.) But that argument is directly at odds with his own statements in other submissions. (*See, e.g., id.* at 6.) In his response to the motion for summary judgment, for example, Plaintiff asserts that Defendants Best and Franklin are not entitled to summary judgment because: "had the Plaintiff been afforded the opportunity to submit his evidence of actual innocence, he would never have been found guilty of any rule infractions thus abrogating the punishment Plaintiff received[.]" (*Id.* at 2.) The court concludes that Plaintiff is challenging not only the process he received at the hearing but also its final outcome.

8

As a second reason that the court should disregard *Heck*, Plaintiff assert that he has not "requested at any time throughout the grievance process or any other process to have his good-conduct credits restored because Plaintiff does not receive any good-conduct credits against his sentence as Plaintiff [is] under state statute [and] is required to serve 100% of his sentence in accordance with the 'Truth in Sentencing' statute." (*Id.* at 7.) But that contention is at odds with his admissions elsewhere in his pleadings that the AC revoked three months of good-time credits. (Complaint [1] at 8 ¶17; Good Conduct Revocation Recommendation, Exhibit E to Defendants' Statement of Fact [57-6].) In any event, the fact that Plaintiff is not seeking to have good-time credits restored does not defeat the rationale of *Heck*: "It is irrelevant [whether a prisoner plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).

Third, Plaintiff maintains that the court should permit his due process claim to proceed even though the AC hearing did result in imposition of punishment that affected his sentence. (Plaintiff's Response [76] at 7-8.) In support of this contention, Plaintiff cites to a Second Circuit case, *Peralta v. Vazquez*, 467 F.3d 98 (2nd Cir. 2006), for the proposition that, should he permanently abandon any challenge to the portion of his punishment which impacted his sentence, he should be permitted to proceed on the damages portion of his due process claim. (Plaintiff's Response [76] at 7-8.) As Defendants point out in their reply (Defendants' Reply [84] at 9-10), the Seventh Circuit has directly considered this issue, in the context of a section 1983 claim advanced by a state prisoner, and declined to adopt the Second Circuit's position. In *Haywood v. Hathaway*, 842 F.3d 1026 (7th Cir. 2016), an offender challenged the process he received at an adjustment committee hearing, which resulted in the revocation of good-conduct credits. *Id.* at 1028. The plaintiff in that case asserted that he had waived any challenge to the duration of his sentence, and asserted that, under the *Peralta* standard, his damages claim was not *Heck*-barred. *Id.* The Seventh Circuit expressly rejected the Second Circuit's holding in

9

*Peralta*, and affirmed that under *Heck* and its progeny, the existence of the sanction impacting the offender's sentence is an absolute bar to an adverse section 1983 claim. *Haywood*, 842 F.3d at 1029 ("this is a version of issue preclusion (collateral estoppel), under which the outstanding criminal judgment or disciplinary sanction, as long as it stands, blocks any inconsistent civil judgment."). Under the law of this Circuit, Plaintiff's due process claim is barred even if he "waives" his challenge to the duration of his sentence.

### 2. Plaintiff's Due Process Claim Fails on its Merits

Plaintiff's due process claim is *Heck*-barred, and Defendants Best and Franklin are entitled to summary judgment on this issue. The court notes, further, that the evidence may not support this claim. The loss of good time credits as a punishment for prison disciplinary offenses is a deprivation of liberty protected by the Fourteenth Amendment's Due Process Clause. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Hamilton v. O'Leary*, 976 F.2d 341, 344 (7th Cir. 1992). Before good time credits are revoked, due process requires that a prisoner be provided with certain procedural protections: (1) written notice of the claimed violation; (2) an opportunity to call witnesses and present documentary evidence; and (3) a written statement by the finder of fact of the evidence relied on and the reason for the action. *Wolff*, 418 U.S. at 563–67; *Hamilton*, 976 F.2d at 344. In addition, the findings of the prison disciplinary board must be supported by some evidence. *Superintendent, Mass. Correctional Instit., Walpole v. Hill*, 472 U.S. 445, 454 (1985); *Hamilton*, 976 F.2d at 344.

Plaintiff challenges the second and third *Wolff* factors, and asserts that his finding of guilt was not supported by sufficient evidence. (Plaintiff's Complaint [1], at 5-17; Plaintiff's Deposition [57-2], at 35:8-37:12.) In arguing that he was denied due process at the hearing, Plaintiff contends that he was not permitted to present documentary evidence (in the form of a printout from Sprint) and was not afforded the ability to call witnesses. (Plaintiff's Complaint [1] at 15; Plaintiff's Deposition [57-2] at 35:1-7.) The evidence shows, however, that Plaintiff was permitted to testify at the AC hearing and that he orally relayed all of the evidence in his written records (including

the information contained in the Sprint printout that he claimed exonerated him). (Defendants' Statement of Fact [58] at ¶¶ 19-21.) The AC reviewed Plaintiff's testimony, the history of the confiscated cell phone, the phone's log, and a letter intercepted by IA which showed that Plaintiff owed another inmate money for the use of the cell phone. (*Id.* at ¶¶ 20-24.) The AC ruled on the evidence before it and reduced its findings to writing. (*Id.* at ¶ 25.) Plaintiff now argues that he was not permitted to call witnesses, and he identifies two inmates (John Shores and Tyrese Crawford) as available to testify on his behalf.[1] (Plaintiff's Response [76] at 5-7.) Plaintiff concedes, however, that he did not complete the portion of his disciplinary ticket that explicitly asked him to designate any witnesses that he intended to call at his hearing, (Plaintiff's Deposition [57-2] at 35:1-4; *see also* Plaintiff's July 9, 2014 Offender Disciplinary Report, Exhibit C to Defendants' Statement of Fact [57-4], showing no designated witnesses) and he does not otherwise suggest that he was in some way denied the opportunity to present evidence.

Second, Plaintiff challenges the adequacy of the AC's final written report. (Plaintiff's Complaint [1], at 16; Plaintiff's Deposition [57-2] at 36:10-17.) He suggests that the report did not comport with due process because it did not specifically state that it considered *his* evidence before finding him guilty. (Plaintiff's Response [76] at 6.) As outlined above, however, all that *Wolff* requires is that Plaintiff receive a written statement of the evidence relied upon by the committee and the reasons for the disciplinary action imposed. *Wolff*, 418 U.S. 539 at 563. The AC's final summary report, which Plaintiff acknowledges receiving (Plaintiff's Deposition [57-2 at 53:4-15), sets forth a record of the proceedings (including information that Plaintiff was present, his disciplinary report was read, and that he pleaded not guilty); the basis for the AC's decision; and the "recommended" and "final" disciplinary action to be taken against Plaintiff based on the guilty finding.

---

[1] Plaintiff attaches the affidavits of these two individuals to his response as Exhibits A and B. (See Plaintiff's Response [76] at 11-15.)

Plaintiff also challenges the sufficiency of the evidence underlying the AC's decision, arguing that it was not supported by "some evidence" and that the AC relied on the allegations of the disciplinary report. (Plaintiff's Complaint [1] at 16, Plaintiff's Deposition [57-3] at 35:14-36:17.) In fact, as noted, the AC reviewed Plaintiff's evidence, the history records of the confiscated cell phone, the phone's logs, and the intercepted letter. (Defendants' Statement of Fact [58] at ¶¶ 20-24.) After doing so, the AC determined that Plaintiff had contacted his mother on that phone. (*Id.* at ¶ 25.) Thus, "some evidence" supported the AC's findings. To the extent Plaintiff believes the AC should have required some higher standard of proof, or that it was required to rule out other logical possibilities, this is not the law. All that the AC must have is "some" or "any" evidence that points to Plaintiff's guilt. *Hill*, 472 U.S. at 457 (explaining that "meager" evidence is still "some evidence."); *see also Viens v. Daniels*, 871 F.2d 1328, 1335 (7th Cir. 1989) ("Although the exculpatory evidence would presumably have allowed the disciplinary board to reach a contrary conclusion, it did not nullify or directly negate the evidence of guilt on which the board relied. Under *Hill*, the courts are barred from assessing the relative weight of the evidence. It is therefore in general immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority relied or there are other extr-ordinary circumstances."). Accordingly, there is no genuine issue of material fact as to whether the AC's finding was supported by "some evidence."

Finally, Plaintiff suggests that Best and Franklin acted with bias against him and/or that they were not impartial with respect to their decision-making. (Plaintiff's Response [76] at 2, stating that "Defendants demonstrated profound partiality towards their fellow staff members, such that their legal duty as fact finders were vitiated.") Plaintiff's suspicions, which appear to be based on little more that dissatisfaction with the outcome of the disciplinary proceeding, are insufficient to establish that Defendants violated his constitutional rights

**B.    Plaintiff's Conditions of Confinement Claim (against Williams, Studer, and Johnson)**

Defendant Williams, Johnson, and Studer argue that they are entitled to summary judgment as to Plaintiff's deliberate indifference claim against them. More specifically, Defendant Williams argues that he "may have been subjectively aware of Plaintiff's complaints, but acted on them and did not ignore them." (Memorandum in Support of Defendants' Motion [57-1] at 2.) Defendants Johnson and Studer argue they lacked any personal knowledge that Plaintiff was exposed to the allegedly unconstitutional conditions of confinement while he was housed in F-house. (*Id.*)

The court notes, first, that Plaintiff has acknowledged that he "has never had direct communication with either defendant [Johnson or Studer] nor has he written either defendant complaining of his conditions of confinement and at this juncture choose to drop Johnson and Studer as Defendants." (Plaintiff's Response [76] at 10.) The court construes this as a request to voluntarily dismiss these individuals as Defendants in this action.

That leaves the claim as against Williams. With respect to that claim, the court concludes that genuine issues of material fact preclude summary judgment. The Eighth Amendment imposes a duty to "provide humane conditions of confinement" and "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012). Determining whether an inmate's rights have been violated involves a two-fold analysis: (1) "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities"; and (2) "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks and citation omitted). "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.*

In the record before the court, there is conflicting evidence as to the nature and extent of

the communications between Plaintiff and Defendant Williams. Plaintiff testified at his deposition that he had direct personal conversations with Defendant Williams about the conditions in the F-house and that he (and other inmates) submitted grievances complaining about the conditions. (Plaintiff's Deposition [57-3] at 77:6-8, 9-11, 12-20, 22-24; 78:1-9. Defendant Williams, on the other hand, has produced an affidavit stating that he is not personally familiar with Plaintiff, cannot recall ever meeting Plaintiff, and does not recall any conversations with Plaintiff regarding the conditions of his confinement. (Williams Affidavit [57-10] at ¶¶ 6-10.) Defendant Williams also does not recall having reviewed any grievances from Plaintiff regarding the conditions of his confinement and asserts that the particular grievance Plaintiff attached to his complaint was not reviewed by him. (*Id.* at ¶¶ 12-13.) Construing this evidence in the light most favorable to the non-moving party, the court assumes that Plaintiff notified Williams of his concerns.

Second, there is little evidence in the record as to what steps--if any--were *actually* taken to remedy the complained-of conditions. Plaintiff testified that: "[s]ometimes when [Williams] was walking, like was everything okay, we tell him, and he would have somebody behind him like the major or lieutenant, and he jot down what complaints we have, I guess, basically, to either record it, or letting us know that they are going to fix it, or what have you." (Plaintiff's Deposition [57-2] at 77:12-20.) Construing this testimony in the light most favorable to Plaintiff, it suggests that Defendant Williams may have recorded Plaintiff's concerns and may have taken some action thereafter with respect thereto, but sheds little light on the question of what steps, if any, were taken. Defendant Williams' affidavit is similarly unhelpful; it states, generally, that when inmates directed complaints to Williams about problems with the housing unit or their cells, he directed one of his Assistant Wardens to look into the matter and address the issue. (Williams Affidavit [57-10] at ¶ 15.) There is nothing in this affidavit, or elsewhere in the record, that shows that this process was followed in this case, or that Williams directed any Assistant Warden to look into and address the complained-of conditions.

Defendants' argument also overlooks the fact that the complained-of conditions in this

case (those Plaintiff allegedly endured while in segregation in the F-house) are more systemic than localized. There is, thus, a basis for the reasonable inference that Defendant (as the warden) knew about those systemic conditions. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (holding that senior correctional officials could be expected to know of, or participate in creating, systemic conditions at the facility); *Gray v. Hardy*, 826 F.3d 1000, 1008-09 (7th Cir. 2016) (finding summary judgment was improper because jury could infer that warden, based on his supervisory role, was aware of systemic pest infestation).

Defendant Williams' motion as to Plaintiff's conditions of confinement claim is therefore denied.

## **CONCLUSION**

For the reasons stated, Defendants' motion for summary judgment [57] is granted in part and denied in part. Based on Plaintiff's representations in his response, Defendants Studer and Johnson are dismissed as Defendants in this action. Plaintiff may proceed against Defendant Williams with a conditions-of-confinement claim. This case is set for a telephone status on Tuesday, October 16, 2018 at 8:30 a.m., the call to be initiated by defense counsel from his office.

ENTER:

Date: September 28, 2018

_____
REBECCA R. PALLMEYER
United States District Judge